UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN BOU, #146744,

                Petitioner,                Case Number 2:12-cv-13401
                                                  Honorable Nancy G. Edmunds

v.

WILLIE SMITH, Warden,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was found guilty after a jury trial in the Wayne Circuit Court of second-degree criminal sexual conduct (CSC), MICH. COMP. LAWS § 750.520c(1)(a)). As a result of this conviction Petitioner was sentenced as a fourth-time habitual felony offender to 10-to-25 years. Petitioner's was on parole when he committed the CSC offense, so his sentence is being served consecutively with his prior sentence. Petitioner claims that he is entitled to habeas relief because he was denied his Sixth Amendment right to a speedy trial. The petition will be denied because Petitioner's claim does not merit relief. The Court will also deny Petitioner a certificate of appealability and permission to proceed in forma pauperis on appeal.

I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. §

2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> In June 2009, defendant attended a party at the home of Barbara Hall. Also attending the party was Hall's 12–year–old granddaughter (the victim). At some point, defendant and the victim were in the swimming pool together. Defendant offered to teach the victim how to float on her back. In the process of teaching the victim, defendant placed his hand on the victim's buttocks for approximately 20 seconds. Minutes later, defendant asked the victim to retrieve some hair gel for him from the bathroom. Defendant followed the victim into the house and told the victim that he wanted to take her picture. Defendant removed a camcorder from his bag and filmed the victim as she stood in the bathroom. Defendant then told the victim that she "ha[d] a nice body for a twelve year old." The victim was wearing only a bathing suit at the time.
>
> The victim later told her grandmother what had happened. Hall reported the incident to the police. The victim gave oral and written statements to the police over the course of the following days. The police thereafter obtained a warrant to search defendant's home. A camcorder was recovered from defendant's residence. The police subsequently recovered a disk containing the video recording of the victim that defendant had apparently made with the camcorder in question.
>
> Prior to trial, defense counsel moved to suppress evidence, including various videos and photographs of other young females found in defendant's possession, the video of the victim that had been recovered by the police, and certain additional other-acts evidence. The trial court granted the motion in part, ruling that the prosecution could not introduce the videos and photographs of other young females or the additional other-acts evidence. However, the court ruled that the video of the victim taken by defendant was relevant, was not unduly prejudicial, and would be admissible at trial.
>
> Defense counsel also moved to dismiss the CSC II charge on the ground that defendant had not been brought to trial within 180 days of the prosecution's receipt of notice that he was incarcerated and awaiting trial. See M.C.L. § 780.131; M.C.L. § 780.133. The trial court denied the motion, finding that the prosecution had acted in good faith and had taken reasonable steps toward bringing defendant to trial within the 180–day period.
>
> At trial, the jury heard the testimony of several prosecution and defense witnesses, including the victim, the victim's grandmother, a woman with whom defendant had attended the party, a private investigator, and the police officer who searched defendant's residence. The jury also watched the video recording that defendant had made of the victim. As noted previously, the jury convicted defendant of one count of CSC II.

*People v. Bou*, No. 299468, 2011 WL 4949999, at *1 (Mich. Ct. App. Oct. 18, 2011).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, which raised the following claims:

> I. Appellant was denied a fair trial by the trial court's admission of irrelevant and highly prejudicial evidence of a video taken of complainant by Appellant following the commission of the alleged offense and that Appellant tried to conceal the video by giving it to a third party.
>
> II. The charges against Appellant must be dismissed with prejudice because the trial court lost jurisdiction to try him, pursuant to M.C.L. §780.131 and M.C.L. §780.133.
>
> III. The evidence was insufficient to support Appellant's conviction of second-degree criminal sexual conduct.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Bou*, 2011 WL 4949999, at *1, 6. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the following claim:

> I. Appellant is entitled to dismissal of the charges where several inexcusable delays prolonged the trial beyond the 180 rule in violation of MCLA 780.133.

The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Bou*, 811 N.W.2d 493 (Mich. 2012) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

> unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786

(2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

III. Discussion

A. Exhaustion

Respondent asserts that Petitioner is not entitled to habeas relief because Petitioner did not present his claim to the state courts as a Federal constitutional claim.

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. See *O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

A petitioner fairly presents his claims when he identifies the constitutional right that he claims has been violated and the particular facts which supported his claims to the state courts. *Onifer v. Tyszkiewicz*, 255 F.3d 313, 315 (6th Cir. 2001). To fairly present a claim, it is not enough that all the facts necessary to support a federal claim were before the state court or that a somewhat similar state law claim was made. See *Anderson*, 459 U.S. at 6; *Harris v. Rees*, 794 F.2d 1168, 1174 (6th Cir. 1986); see also *Duncan*, 513 U.S. at 366

6

(mere similarity of claims is insufficient to exhaust). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365-66.

Petitioner did not assert a violation of his Sixth Amendment right to a speedy trial in the Michigan Courts. Rather, Petitioner claimed a violation of Michigan's so called "180-day rule" which involves a statutory right of people already confined in prison to be brought to trial within 180 days. Because Petitioner did not "fairly present" his Sixth Amendment claim in the Michigan appellate courts, his claim is unexhausted. An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has presented in this application. He may file a motion for relief from judgment under Michigan Court Rule 6.500 et. seq. However, a habeas petition may be denied on the merits notwithstanding the failure of the applicant to exhaust his state court remedies. See 28 U.S.C. § 2254 (b)(2). The Court will therefore discuss the merits of Petitioner's unexhausted claim to determine whether it can be denied on the merits.

B. Speedy Trial

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI; see also *Klopfer v. North Carolina*, 386 U.S. 213 (1967) (holding that the right to a speedy trial is incorporated through the Fourteenth Amendment and thus applies to the states). The

Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), established a four-factor test for evaluating a Sixth Amendment speedy-trial claim: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. None of these four factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. Applying these factors here shows that Petitioner's speedy-trial rights were not violated.

1. Length of the delay

The length of the delay is a threshold factor for any Sixth Amendment speedy trial claim. *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006). "That is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007); see also *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."). Thus, this Court must determine, at the outset, whether the delay here was "uncommonly long" or "extraordinary." *Watford*, 468 F.3d at 901 (citations omitted).

Generally, a delay is presumed prejudicial and deemed sufficient to require further analysis when it exceeds one year. *Id.* Furthermore, the longer the delay "stretches beyond the bare minimum needed to trigger judicial examination of the claim," the stronger the presumption of prejudice to the defendant from the pretrial delay. *Doggett*, 505 U.S. at 652. The length of the delay is measured from the date of the indictment or the date of the

arrest, whichever is earlier. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005).

In Petitioner's case, the felony complaint for the second-degree CSC charges was issued on July 13, 2009, and Petitioner's jury trial began on June 10, 2010. Such a delay, which was less than a year, does not rise to the minimal threshold level required to proceed with further analysis. See *United States v. Williams*, 231 F. App'x 457, 463 (6th Cir. 2007); *Randle v. Jackson*, 544 F. Supp. 2d 619, 632 (E.D. Mich. 2008) ("That [11 month] delay, although substantial, is not uncommonly long, and it does not plainly cross the threshold separating those cases that warrant further examination because of presumptive prejudice."). However, even assuming without deciding that the delay was presumptively prejudicial, the remaining factors outweigh the presumption.

2. Reason for the delay

In considering the reasons for delay, this Court must consider the justifications offered by the Government, as "only those periods of delay attributable to the government or the court are relevant to [defendant's] constitutional claim." *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000). In *Barker*, the Supreme Court established a sliding scale of justifications for delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (footnote omitted); see also *Maples*, 427 F.3d at 1026 ("In

9

considering this factor, we weigh some reasons more heavily than others. For instance, government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while 'more neutral' reasons such as negligence or overcrowded dockets weigh against the state less heavily."). "The purpose of this weighting scheme is to quantify 'whether the government or the criminal defendant is more to blame for [the] delay.'" *Watford*, 468 F.3d at 902.

Here, it appears that any delay between the filing of the criminal charges and the commencement of proceedings was due to miscommunication between the court and the prosecutor in obtaining Petitioner's presence. Respondent asserts, and Petitioner does not refute, that the prosecutor learned on October 14, 2009, that Petitioner was housed in the Michigan Department of Corrections. Confusion between the prosecutor and the state district court about handling the writ to transport Petitioner to the local jail appears to have caused the delay of the initial arraignment.

Petitioner's preliminary exam was then held on February 3, 2010, after which Petitioner was bound over to the state circuit court for trial. The record shows that Petitioner then requested to be returned to a Michigan Department of Corrections facility instead of being housed at the Wayne County Jail, which might have caused further delays. Consequently, the delay does not weigh heavily against the prosecutor because it does not appear to have been motivated by a "deliberate attempt to delay the trial in order to hamper the defense," *Barker*, 407 U.S. at 531, or by "bad faith, harassment or attempts to seek a tactical advantage," *Schreane*, 331 F.3d 548, 553 (6th Cir. 2003).

3. Assertion of his Sixth Amendment right

Next, it does not appear that Petitioner ever asserted his federal constitutional right to a speedy trial. An examination of the state record shows that Petitioner claimed that the prosecutor violated Michigan's statutory 180-day rule, but there is no reference in those pleadings to Petitioner's Sixth Amendment right to a speedy trial. Additionally, Petitioner did not even assert his state claim until just over a month before trial was scheduled to begin.

Petitioner's failure to timely assert his Sixth Amendment right weighs heavily against him. See *Barker*, 407 U.S. at 529, 532 (noting that courts are free to "weigh the frequency and force of the objections" and emphasizing that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial"); *Watford*, 468 F.3d at 907 (finding that five-month delay in asserting speedy trial right weighed against defendant); *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999) ("A defendant's failure to assert his rights in a timely fashion weighs heavily against his Sixth Amendment claim.").

4. Prejudice

In considering the final *Barker* prong, prejudice to Petitioner from the delay, the Court "must heed the Supreme Court's instruction to consider the possible prejudice suffered by the defendant in light of the interests safeguarded by the Sixth Amendment's speedy trial guarantee." *Watford*, 468 F.3d at 907 (citations omitted). "Three interests are paramount: (i) preventing oppressive pretrial incarceration; (ii) minimizing the anxiety and concern of the accused; and (iii) limiting the possibility that the defense will be impaired." *Id.* (citations omitted). The third factor, impairment of the defense, is the most important

11

"'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* (quoting *Barker*, 407 U.S. at 532 and *Schreane*, 331 F.3d at 557-58).

Petitioner does not point to any evidence of prejudice relating to the "paramount interests" of the Sixth Amendment. He fails to argue that he suffered any oppressive pretrial incarceration. Because he was properly incarcerated on his prior conviction during the entire period of the delay about which he complains, he clearly cannot claim any oppressive pretrial incarceration resulting from the delay. See *Watford*, 468 F.3d at 907 ("[B]ecause Watford was already incarcerated on state murder charges, he had suffered no oppressive pretrial incarceration at the hands of federal authorities."). Furthermore, Petitioner does not argue that he suffered any anxiety or concern during his pretrial delay or that his defense was impaired by the delay. Petitioner's failure to allege prejudice of any kind from the delay weighs heavily against him and in favor of the prosecutor.

Accordingly, in balancing the *Barker* factors, any delay in bringing Petitioner to trial did not deprive him of his Sixth Amendment right to a speedy trial, and he has not demonstrated entitlement to habeas relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because any appeal of this decision would be frivolous

V. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and permission to proceed on appeal in forma pauperis.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 17, 2014


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 17, 2014, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer